Dear Consumer Credit Jones
¶ 0 This office has received your letter requesting an official Opinion in which you ask, in effect, the following question:
When refinancing a small consumer loan — that is, a loan of lessthan $640 — may supervised lenders, under the provisions of 14AO.S. 1991, § 3-508B[14A-3-508B], impose an acquisition charge or aninstallment account handling charge in lieu of the less costlyfinance charge permitted under 14A O.S. 1991, § 3-508A[14A-3-508A]?
 GENERAL RESPONSIBILITIES OF DEPARTMENT OF CONSUMER CREDIT
¶ 1 The Department of Consumer Credit's original purpose was to administer the Oklahoma Consumer Credit Code, which was adopted in 1969. Today the Department regulates small lenders, pawnshops, credit service organizations, rent-to-own lessors, precious gem dealers and health spas. It also administers Oklahoma's version of federal "Regulation `Z'" which governs truth in lending. The focus of your inquiry is on the Code's regulation of small loan lenders, called "supervised lenders,"[1] who primarily lend to individuals unwilling or unable to borrow from banks either by choice or because of poor credit, limited income or insufficient collateral.
¶ 2 Loans made by supervised lenders are divided into two categories based on the amount of money loaned to the customer. Section 3-508A(1) of Title 14A, which deals only with large supervised loans, allows supervised lenders to "contract for and receive a loan finance charge not exceeding that permitted by this section," both when a large supervised loan is initially made and when a large supervised loan is refinanced under 14AO.S. 1991, § 3-205[14A-3-205]. In contrast to this provision, 14A O.S.1991, § 3-508B[14A-3-508B], which deals with small supervised loans, authorizes supervised lenders to collect an acquisition charge and an installment account handling charge in lieu of the lower loan finance charges which are available when large supervised loans are made under Section 3-508A.
 LARGE SUPERVISED LOANS
¶ 3 Supervised lenders of larger amounts make what are known in the trade as "A" loans because their authority is based on 14AO.S. 1991, § 3-508A[14A-3-508A]. "A" loans have supervised interest rates called "loan finance charges" of 15 to 30 percent depending on the size of the loan. Customers typically use these large supervised loans for purchases of appliances, televisions, or automobiles, for vacations, consolidation of credit card or other outstanding debts, or for home improvements.
 SMALL SUPERVISED LOANS
¶ 4 Smaller supervised loans — known in the trade as "B" loans — are made under the authority of 14A O.S. 1991, § 3-508B[14A-3-508B]. The size of "B" loans in 1996 was limited to no more than $640.[2] "[I]n lieu of the loan finance charges specified in Section 3-508A,"[3] lenders of small supervised loans are allowed by statute to charge (1) an "acquisition charge" (comparable to an origination fee) of 1/10 of the amount of cash advanced, and (2) a monthly "installment account handling charge" ranging from $9.60 to $16.00 per month, again depending on the amount of money loaned. Lenders of small supervised loans are allowed a significantly greater percentage return on their installment loans due to the small dollar amounts involved and the greater risk of loss upon default.
¶ 5 Instead of paying off their loans in full, many small supervised loan borrowers simply refinance the remaining debt, pay accrued charges, and either receive additional cash representing any principal they have repaid on the loan or simply extend the term of the loan. For example, a borrower who desires to receive $100 on a one-month note will be charged a $10 acquisition charge and a $9.60 installment account handling charge, for a total amount of $119.60 due in one month. If, on the due date, the borrower is unable to pay the entire $119.60, such a borrower often will refinance the note by simply paying the accrued charges of $19.60, in which case the amount owed at the end of the second month is once again $119.60. If this is repeated each month for a year, the borrower will have paid a total of $235.20 in acquisition charges and installment account handling charges, and still owe $119.60. The resulting effective annual percentage rate is 235.2%.
 AMBIGUITY CREATED BY OKLAHOMA'S REFINANCING PROVISIONS
¶ 6 Authorization for both large and small supervised loans was enacted in 1969 as part of the Oklahoma Consumer Credit Code, Title 14A of the Oklahoma Statutes. The Oklahoma Code was based primarily on the Uniform Consumer Credit Code promulgated by the National Conference of Commissioners on Uniform State Laws, but contained more than two hundred legislative amendments which customized the model code to suit legislative intent in Oklahoma.See The Oklahoma Version of the Uniform Consumer Credit Code,
by Bryce A. Baggett and Fred H. Miller (1969) (printed at 14A Okla. Stat. Ann. (West) at p. 2 as part of introduction to Oklahoma Consumer Credit Code).
¶ 7 Sections 3-205, 3-206 and 3-208 of the Oklahoma Consumer Credit Code govern refinancing, consolidation, or other advances under supervised loans. Section 3-205, for example, provides for loan finance charges on refinancing:
 With respect to a consumer loan, refinancing, or consolidation, the lender may by agreement with the debtor refinance the unpaid balance and may contract for and receive a loan finance charge based on the principal resulting from the refinancing at a rate not exceeding that permitted by the provisions . . . on loan finance charge for supervised loans (Section 3-508)[.]
14A O.S. 1991, § 3-205[14A-3-205] (emphasis added).
¶ 8 In providing for the refinancing of consumer loans, Section 3-205 also establishes the charges that supervised lenders may impose when refinancing a loan by referring to "Section 3-508." But Oklahoma's Code has no Section 3-508. While the Oklahoma Consumer Credit Code contains both a Section 3-508A and a Section 3-508B, it does not contain a Section 3-508.
¶ 9 Because the rate which may be charged when a loan is refinanced is, under Section 3-205, governed by Section 3-508 — which does not exist in Oklahoma's version of the Consumer Credit Code — an ambiguity exists regarding what, if any, charges may be assessed when a loan is refinanced under Oklahoma's version of the Code.
 RESOLUTION OF THE AMBIGUITY REGARDING WHICH CHARGES MAY BE IMPOSED WHEN A CONSUMER LOAN IS REFINANCED
¶ 10 The ambiguity created by reference to Section 3-508 is addressed in the footnote to Section 3-205. That footnote not only appeared in the 1969 Session Laws (ch. 352, § 3-205), and both the 1969 and 1970 Supplement to the Oklahoma Statutes, but was also adopted by the Oklahoma Legislature in its recodification of the Oklahoma Statutes in 1971. 75 O.S. Supp.1972, § 184[75-184].
¶ 11 Footnote 1 to Section 3-205, added originally by West Publishing Company, official compiler of the Oklahoma Statutes, says "Should read `(Section 3-508A)'." Under Section 3-205, and applying the footnote contained in West's annotation, when supervised lenders refinance a consumer loan they may impose charges in accordance with Section 3-508A, but may not impose the more costly acquisition charges or installment account handling charges allowed under Section 3-508B.
¶ 12 In 1971 recodification was prepared in compliance with Article V, § 43 of the Oklahoma Constitution, which requires that the Legislature revise, digest and promulgate Oklahoma Statutes every ten years. Every ten years the Legislature has, by statute, directed West Publishing Company to submit the compiled manuscript of all Oklahoma Statutes to the Oklahoma Supreme Court for approval as to form and for compliance with provisions of the respective acts.[4] The Court, upon approval of the manuscript, is directed to certify the same "as to accuracy, completeness and correctness." After that certification, respective sessions of the Legislature have expressly adopted the compilation, as certified, as the existing laws of the State of Oklahoma.
¶ 13 In adopting the 1971 recodification of the Oklahoma Statutes prepared by West Publishing Company, the Legislature not only adopted West's compilation of the statutes, but also adopted the annotations to the statutes, as indicated in Section 184, enacted to adopt the 1971 compilation:
 The Oklahoma Statutes 1971, compiled, codified and annotated and indexed under the provisions of House Bill No. 1085, Title 75, Chapter 6A, Oklahoma Session Laws 1971, Page 266, and compiled, codified and annotated under the supervision of the Justices of the Supreme Court of the State of Oklahoma and approved by them on November 9, 1971, and promulgated and published by John Rogers, Secretary of State, under proclamation dated January 5, 1972 . . . are hereby adopted as the Code and Revised Statutes of the State of Oklahoma to be known as Oklahoma Statutes 1971, and that all general laws of the State of Oklahoma not therein contained are hereby repealed[.]
75 O.S. Supp. 1972, § 184[75-184] (emphasis added).
¶ 14 Because a "footnote" is an "annotation," Webster's Third New International Dictionary 87, 885 (1981), the Legislature's adoptions of the annotations included adoption of the footnotes. Thus, the Legislature adopted both text and footnotes as law in 1971, including the footnote to Section 3-205, and repealed all general laws not contained in the annotated codification. The footnote was also contained in the 1981 and 1991 recodifications of the same laws. At no time since 1969 has the Legislature taken any steps to indicate a contrary legislative intent.
¶ 15 Because of (1) the Legislature's 1971 adoption of the footnote to Section 3-205, (2) the use in Section 3-205 of the term "loan finance charge" authorized only in Section 3-508A, (3) the inclusion of the footnotes in subsequent Session Laws, and (4) the Legislature's inaction since 1969 regarding the footnote, we conclude that the Legislature intended for Section 3-205's reference to "Section 3-508" to be — as the footnote indicates — a reference to the "loan finance charge" found in Section 3-508A of Title 14A.
¶ 16 Oklahoma's decision to exclude the imposition of acquisition charges and installment loan charges when a consumer loan is refinanced was no accident. As the Comments to Oklahoma's version of the Code indicate, the Code's development of a dichotomy between large supervised loans ("A" loans) and small supervised loans ("B" loans) is modeled after the Texas code.The Oklahoma Version of the Uniform Consumer Credit Code, by Bryce A. Baggett and Fred H. Miller (1969) (printed at 14A Okla. Stat. Ann. (West) at p. 2 as part of introduction to Oklahoma Consumer Credit Code); Okla. Stat. Ann. tit. 14A, § 3-508B Okla.Comment (West). In modeling this dichotomy after the Texas code, the Oklahoma Legislature specifically drafted Oklahoma's Code so that no refunds of small loan acquisition charges would ever be required.
¶ 17 Under the Texas version of the Code, when a loan is prepaid, lenders must refund applicable portions of the acquisition charge and the installment account handling charge collected on small supervised loans. Tex. Civ. Stat. Ann. art. 5069-3.16(4) (West). In Oklahoma, however, when a loan is prepaid, refinanced or consolidated (Section 3-210), the acquisition charge, which is "earned in full" at the time the loan is executed, is not subject to refund. 14A O.S. 1991, §3-508B[14A-3-508B](4).
¶ 18 Thus, Oklahoma's dichotomy between large supervised loans and small supervised loans contains a tradeoff when compared to the Texas plan. Under Oklahoma law, makers of small supervised loans, unlike those in Texas, are not required to refund any of the acquisition charge when a small supervised loan is prepaid. The tradeoff for this benefit, not available under the Texas code, is that only loan finance charges can be imposed when a small supervised loan is refinanced. That is, instead of requiring the acquisition charge to be refundable upon prepayment, as in Texas, the Oklahoma Legislature chose to allow the lender to keep the full acquisition charge incurred at the time a "B" loan is originally made, but prevented the lender from assessing additional acquisition charges or installment account handling charges when "B" loans are refinanced.
¶ 19 For the reasons set forth above, we conclude that when a small supervised loan (a "B" loan) is refinanced, the lender is not authorized, under Oklahoma's version of the Consumer Credit Code, to charge either an acquisition charge or an installment account handling charge. Instead, the lender, when refinancing a small supervised loan, may only contract for and receive a loan finance charge not to exceed the limits set forth in 14A O.S.1991, § 3-508A[14A-3-508A].
 ¶ 20 It is, therefore, the official Opinion of the AttorneyGeneral of Oklahoma that:
When refinancing a small consumer loan — less than $640 —supervised lenders, under the provisions of 14A O.S. 1991, §3-508B[14A-3-508B], may not impose an acquisition charge or an installmentaccount handling charge in lieu of the finance charge permittedunder 14A O.S. 1991, § 3-508A[14A-3-508A].
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
WALTER W. JENNY, JR. ASSISTANT ATTORNEY GENERAL
[1] A "[s]upervised loan" is defined as "a consumer loan in which the rate of the loan finance charge exceeds ten percent (10%) per year." A "[s]upervised lender" is "a person authorized to make or take assignments of supervised loans." 14A O.S. 1991,§ 3-501[14A-3-501].
[2] Section 3-508B(1) refers to loans having a cash value of one hundred dollars ($100.00) or less. This language was introduced in the 1969 adoption of the Consumer Credit Code. Title 14A O.S. 1991, § 1-106[14A-1-106], first adopted in 1979, provides that such dollar amounts would thereafter be adjusted annually for inflation. The dollar amounts used in this Opinion are current for 1996-1997. OAC 160:20-1-17.
[3] 14A O.S. 1991, § 3-508B[14A-3-508B](1).
[4] 1991 Okla. Sess. Laws ch. 27, § 6; 1981 Okla. Sess. Laws ch. 91, § 7; 1971 Okla. Sess. Laws, ch. 117, § 7; 1961 Okla. Sess. Laws ch. 6, § 7; 1951 Okla. Sess. Laws ch. 4, § 7; 1941 Okla. Sess. Laws ch. 4, § 7.